and I gather that Ms. Freeland will be arguing this by audio, correct? That's right. Sorry you didn't make it in, Ms. Freeland. I think you weren't the only one who had trouble, but we're just glad to have you at least on the machines, as I call them. Well, thank you for accommodating me, and I apologize for not being there. Coming to the court is one of my favorite parts of my job. But if you're ready to begin, I am. Yes, you may proceed. And I'd like to reserve three minutes, please, for rebuttal. Granted. May it please the Court, my name is Lisa Freeland, and I'm arguing today on behalf of Lawrence Fisher. Your Honors, Lawrence Fisher's Brady claim was procedurally defaulted, but not because he failed to file a second PCRA upon learning of the Commonwealth leniency in exchange for testimony deal with Marlon Epps. At the time he discovered that deal, there was no available state corrective process, and any attempt he may have made to exhaust the claim at that time in state court would have been futile. Well, you don't disagree that the transcript of Epps' plea and sentencing were available? I mean, the district court made that finding. That's right. They were available, and because they were available in the public record, the Pennsylvania law says that Mr. Fisher would not have been able to avail himself. Well, I don't know if, well, he could have found them had he been diligent, could he not? Well, Your Honor, I think with respect to the issue of whether this is a newly, whether it's newly discovered evidence, you know, I have to agree with the Pennsylvania state law that it would not have qualified as newly discovered evidence to afford the Pennsylvania court's jurisdiction under 9545B2. But with that said, the availability in the public record of this information at a time after Mr. Fisher's trial does not negate the Commonwealth's obligations under Brady to produce the evidence. But that's a merits issue. Getting to the merits of a Brady issue is the second issue. Yeah. Only reached if there's cause for his procedural default. Now, he says he discovered it, the information, in May 2007. That's right. And it was available under the finding of the district court no later than his PCRA years earlier. The only reason, so clearly for 60 days after May 2007, had he been diligent, he would have been able to file, would he not? Well, Your Honor, there's, I mean, there's absolutely That's a yes or no question. He knew it in May 2007. He could have filed until for 60 days thereafter and come within the exception under the state law, yes? He could not have filed. Why not? Come within the exception. Had he been diligent, he could have filed. He would have discovered this. Well, no, Your Honor. He had discovered it and he didn't file. That's not what Pennsylvania law says. Pennsylvania law says that if the information was in a public record, it is deemed to be known. And so it's not, they don't even address the issue of diligence. It's deemed to be known if it existed in a public record, and therefore So your argument is that it was futile for him to have raised it. Exactly, because he never would have been able to get into the court under 9545B, not because of the lack of diligence, but because Pennsylvania law deems information in a public record to be known. It's not unknown. Okay, so here is the issue as I see it. Your argument seems to depend upon there being a different standard for the treatment of public records in federal, under federal, and state law. Your argument is, is it not, that the fact that the X transcripts were in the public record does not substantively defeat your Brady claim as a matter of federal law, but that the fact they were in the public record precluded you from bringing the claim in state court, correct? Exactly, Your Honor, exactly. And as I understand, your position is that the fact that the magistrate's finding of fact, if it can be called that, he held no evidentiary hearing, that he knew of it because it was in the public record, was an unreasonable finding of fact under AEDPA. Do I understand you correctly? Well, in the federal court, we're not dealing with AEDPA and unreasonable. With respect to that factual finding, if you want to call it a factual finding, my position was in the district court and is here today that there is absolutely no evidence in the record, state court or federal court record, presented by either party to support a finding that Mr. Fisher knew or should have known of the information any earlier than the date that he discovered it. So that any finding that the magistrate made would be clearly unreasonable? It would have been clearly erroneous, Your Honor, the factual finding made by the district court about his knowing or should have known that this information Why was it clearly erroneous? Why was it clearly erroneous? It was in the public record. Why? It was available. And more so, it was readily discoverable in the public record. And he discovered it no later than May 2007. Yes, and he did discover it. He did nothing. I mean, if you do nothing, you're in a better position than if you do something as a matter of procedural default? Your Honor, what he did was immediately amend his federal petition to include the claim, knowing that it had not previously been included, and also understanding that he could not return to state court to exhaust the claim there. Okay. He first raised his claim, your claim of this public record's exception. Yes, in Three years. He raised it in April 2010. That's right. Three years after he discovered the information. Well, I raised No, no, no, I'm not quite I'm sorry, I'm sorry, I can't see you. Where is there any basis for finding that within the first 60 days of that three-year period, he was constrained or believed he was constrained from filing a PCRA petition? Well, I mean, on May 24th of that year, in May 2000, he did lodge the claim in federal court. With respect to when the public record rule You mean 2007, right? I'm sorry, say that again, your Honor? You mean 2007. I mean, he discovered it in 2007. Right, and lodged in the federal amended petition But he never raised the public record's exception that you're raising now until 2010, three years later. So implicit in that is that he was certainly tardy, but that he didn't know of it until, let's say, shortly before he finally came into federal court and in response to the second supplemental R&R said, Hello, public record exception I couldn't have filed in state court. What I'm saying to you is three years earlier, when he discovered the information, he certainly, it seems to me, was unaware of this public record exception and he should have filed within 60 days based on the newly discovered evidence of May 2007. No, your Honor. But I don't understand. Okay, let me explain. I mean, that is incorrect in terms of the lack of knowledge about a public record's exception. It's something that has existed in the law for some time. No, no, I'm just saying he never raised it for three years, so he didn't know it existed, presumably. Well, no, your Honor. It was actually me and not him as counsel for Mr. Fisher. Let me explain that, and it may be a fault of my own. I raised it the first time that a court found that he should have filed a PCRA within 60 days of discovery. If you remember in the magistrate judge's initial report and recommendation in footnote 1, which appears at appendix volume 1, page 4, the magistrate judge noted that the Commonwealth had made an argument about a second PCRA and in conclusion said, of course, we need not further explore this issue as petitioner admits to an earlier procedural default. And she then went on to analyze the earlier procedural default. It was not until the district court, for the first time, found that Mr. Fisher should have filed a second PCRA, and perhaps, your Honor, the mistake was mine in not filing a motion to reconsider that finding. That would have been a motion to reconsider the district court's memorandum opinion of February 4, 2010. And I did not do it at that time because I knew that the district court had remanded the matter back to the magistrate judge for a reassessment of actual innocence. But that was the only issue. That's why it was first raised in April 2010 on the objections to the finding that there was not actual innocence shown. And there's actually a middle ground. Why not a stay and obey? That is, district court, stay your hand, and let's see what happens in the state proceedings, although I'm telling you I think it's likely to be futile. And, your Honor, yes, I do believe that that is the middle ground. The difficulty with that for a litigant and for counsel is that when you are confident that the state court does not have jurisdiction and will ultimately find your petition untimely, that is a huge middle ground risk to take. But then what you say to the district court is, I'm going to tell you I'm making this motion because as of 2007, where stay and obey is clearly okay in this circuit. And in that context, I'm making it, but I'm making it on a pro forma basis because I think it's going to be futile to bring it in the state court because every single state court proceeding has said that if information is readily discoverable, that's game, set, and match. And, your Honor, I think there's still... For public record, excuse me, it's game, set, and match. Yes, and I understand your position. I think there's still some difficulty with that for litigants because once the state court denies jurisdiction and finds the claim untimely, then you're dealing with a different kind of default that you have to overcome in federal court. And I'm aware of no case, federal case, that mirrors the circumstances that you've just described where a litigant was able to come back to federal court following a state court determination that something was untimely and rely on futility. At that point, I think, I mean, the futility argument is an argument that's made when you don't go back to exhausting state court. But the danger to the litigant of returning to state court and coming back following a stay and obey with a state court finding of untimeliness is fatal. And I am unaware of any case law in this circuit or in the federal courts that would allow Mr. Fisher in such circumstances to proceed on his Brady claim. I'll tell you my problem here. I will assume for argument purposes that he first learned in May 2007 that he had a Brady claim or a potential Brady claim. Subsequent to that date, he filed his traverse on January 11, 2008. His supplement to the traverse in April 2009. His objections to the first R&R February 2009. His Rule 59 motion March 2009. His motion to amend the Rule 59 May 2009. His supplemental motion to amend the Rule 59 August 2009. And did not raise the public record exception until April 2010. And now he's saying that's cause for the public record exception is cause for a procedural default. It would not have been in default if he had within 60 days, in my view, within 60 days of May 2007 filed a PCRA petition. It seems very simple. And, Your Honor, I have all of the documents that you're referring to. I believe that the difficulty with your position for me is that there was no reason to raise a public record exception. The magistrate judge had resolved the default issue on a different point. And it was not until February of 2010 that the District Court first said that the failure to file within 60 days was the actual default that we could be talking about. The District Court made an alternative ruling saying it was either defaulted during direct appeal and first PCRA or defaulted when he failed to return to state court within 60 days of discovery. That was the very first time that the public records rule really became relevant. And the only failure, if there was one, it was in failing to seek reconsideration of the District Court's memorandum order. And there is no rule that requires a motion for reconsideration, and especially in cases like this where the District Court was remanding to the magistrate judge for consideration of yet another issue which would have allowed Mr. Fisher to overcome the default. The District Court ruled in the alternative. And the alternative really was that the records were available. And it did, exactly. It made an alternative ruling. And I could have sought reconsideration at that point, but as I explained, because the case was already going back for the magistrate judge to consider whether the default could be overcome by actual innocence, which would have made the public records rule irrelevant. It was a conceded procedural default that went on for years, year after year after year with no attempt to correct. But the default that was conceded was the default that occurred prior to Mr. Fisher's learning in May of 2007. The default that was conceded was that... A default that could have been cured had, when he learned in 2007, he had within 60 days filed a PCRA. If there were no public records rule, Your Honor, I would agree with you. But because there is, and it's very clearly set out in Pennsylvania law... There is a different rule in state court than there is in federal court. So because of Pennsylvania's rule, he has a right to go forward in federal court that he wouldn't have coming out of any other state. Isn't your best argument here that, in effect, the defendants have waived the waiver? Well, I do believe in some sense they waived the waiver, but I think really my best argument, Judge Ambrose, is that there should be no waiver here. This court doesn't have to find waiver. It has the supervisory authority to find waiver, but ordinarily in habeas cases, waiver comes when a petitioner fails to object to a finding and the magistrate, judges aren't... Okay, let me rephrase it. Okay, I'm sorry. Assume there was a waiver just for the moment, even though you're not conceding that. But it's not really brought up by your opposing counsel. Yeah, and on that point, I agree with you, Judge. There's been no suggestion in any of the briefing by the Commonwealth in this court or below that the argument was raised. They did not ask for waiver or forfeiture in this court, and even if they had and even if this court were to find waiver, there is no forfeiture. That is, you know, we have not lost the right to appellate review. At worst, it would be under the plein air standard of review. But even beyond waiver or forfeiture by the Commonwealth, what is there to say that this Pennsylvania Public Records Doctrine, it's called a doctrine, is independent and adequate of the actual Brady claim itself? In other words, it mirrors the Brady claim itself. It states, in effect, that automatically anything on the record of any state court is done by everyone in the state. It's not a fact. Well, yeah, I mean, that is the public records rule under 9545B2, but, Your Honor, I have not seen that applied generally to Brady claims that have nothing to do with the PCRA jurisdiction. Yeah, as I was saying, I've never seen it applied in a Brady context because the Brady two-prong test, whether or not you knew of it, is the exact same thing that the public records doctrine takes away. It says you automatically know if it's anywhere in state court, even though there's no actual proof, and there was no proof before the magistrate, that the petitioner knew of the plea deal that went forward with EPS. Yes, and I guess the answer to that question, Your Honor, is that it's my understanding, and I haven't seen anything to the contrary, that this public records rule is limited in application to the after-discovered evidence exception of the PCRA. I have not seen it applied to the substance of a Brady claim. That is, I have not seen the court say that because something was in a public record after your trial, again, remember, this was after the trial concluded, that the fact that it was in a public record strips you of the ability to show that the information was suppressed under the first prong of Brady. If that answers your question, I believe that the public records rule is limited in application to jurisdiction under the PCRA and does not cross over into the Brady substantive analysis. Can I just ask some questions, assuming we ever get to the merits? Sure. There was evidence in February of the year of conviction. It was 2006? 96? 96, Your Honor. There was a plea with EPS. Then there was the trial in March of Fisher. There was a conviction, and then there was a sentencing of EPS in July. Yes. The original sentencing was scheduled for April of 96, but Mr. EPS failed to appear and had to be brought in on a warrant. He was out on bond until that time. It would seem that it's almost 101 that counsel should look to see. The two key people that were testifying against Fisher were EPS and, I guess, Raheem Anderson. And it would seem that you would want to check as to what their records are, and it would come up immediately that EPS had just pleaded a few weeks before trial. So why rely on the public record when it's right in front of you and all you have to do is an easy, and I mean a truly easy, check? Or, if you don't even want to check and you just want to just wing it, why not ask that question on cross-examination? And, Your Honor, we raised those very points in support of our ineffective assistance of trial counsel claim, which was rejected by the district court, and a certificate of appealability was likewise rejected by this court. Did EPS have a prior record? We don't have the trial record. His prior record, was that turned over? His prior record was turned over. There was every reason then to see about if there's any current record, I would think. And I agree with you. The problem is that it would be truly perverse for the court to find that there was no Brady claim because it would have been so easy for counsel to have discovered the information and counsel should have, in fact, done so. That doesn't make a Brady claim. I mean, it may make a potential Brady claim, granted impeachment material is to be turned over, but is it material impeachment information? Here, I know you argue his potential sentence was 42 years, and I was very moved by that. That makes it look very material to me until I start counting the $300 of restitution awarded by the district court. I counted there were $260 worth of cocaine deliveries in 11 counts, a couple of pieces of cocaine here and there. So it was not exactly ax murderer time. So was it material under Brady? I don't know. It should have been turned over, but whether it's a Brady violation isn't quite so clear. So we have given you much more time. We will get you back on rebuttal. All right. Thank you, Your Honor. Thank you, Ms. Freeland. May it please the court. My name is Ronald M. Wabi, Jr. I'm an assistant district attorney in Allegheny County, and I represent the appellants in this matter, Gerald Rosen. Just one question. How are you doing? As I read your brief, you don't deny that if they had made the claim within 60 days of discovery, you don't deny that under Pennsylvania law it would have been denied? To be honest, Your Honor, I don't know. That was the cases that were cited. The cases that were cited refer merely to instances, for example, one of which where the attorney was disbarred, where a brief was not filed and appellate rights should have been reinstated. Things of that nature. When you were asking questions, you asked specifically about the application of Brady to a state court record issue. And there is no Pennsylvania law that makes it very clear that the Brady claim couldn't have gone back to state court to be exhausted. I don't know the answer as to whether or not the Pennsylvania courts would have determined whether or not that claim was time barred or not. Your brief, though, doesn't take issue with the fact that it would have been denied. Because, Your Honor, I don't know the answer. I'm being honest. How come your brief doesn't take issue with it? It's because I don't know the answer. I don't know. I looked into it. I don't know what they would do because, unfortunately, in Mr. Fisher's case, this could have been the case where we figured it all out, but he didn't go back to have it done. And that was my point when I raised this defense originally back in May of 2000, I mean August of 2007, right after the brief was filed. I suggested they go back to state court and exhaust it. I suggested they ask for the stay pursuant to Ryan Free Weber, and none of these things were done. But is there any case that's under 9545B, I guess is the PA statute, that says that it would not be futile? The case that they cited, I think, was what, Commonwealth v. Lark or something like that? Lark, those cases that she cited do not specifically address this exact type of Brady claim which she's trying to present, which is, like, for example, the transcripts, I grant you, they're part of the public record, if you want to call it that, because they can be checked out by anybody. But whether or not behind the scenes and underneath it all, the Commonwealth had decided to make a sub rosa agreement with Mr. Epps, that's an entirely different claim whatsoever. That is something that's different. That's something that wouldn't have been apparent from the court record. That's something that only exists... But that's the merits, isn't it? I mean, first you have to have cause to get in. There's cause for the procedural default. Is that... You're saying that you don't know about, because the Brady claim wasn't open, wasn't there for all to see, that you're not sure if there was cause or not for the default? Is that what you're saying? No, what I'm saying is I don't know whether or not, if it had gone back to state court, like it was supposed to, what the state courts would have done. That's what makes it defaulted. Okay, let me ask, if they went back to the state court, if he went back to the state court within 60 days of May 2007, would it have been timely under state law? It could have been. I don't know the answer, because I believe it would have been, Your Honor, and I would have been the one who handled the case, Your Honor. So is that why you haven't really brought up procedural default? What? In not going back to the state court? I did bring it up. That's why I brought it up. So you're saying he wasn't – are you confusing reasonable diligence as to a Brady claim with reasonable diligence in discovering that he had a PCRA claim, period? You know what? There wasn't a turnover. No, what happened was he filed this claim in May of 2007. He? Found it. Well, discovered. That's his claim. They discovered it. They had an investigator who combed the record. They filed this claim. Then they raised it in August of 2007. I mean, I'm sorry, May of 2007, the federal habeas claim. I argued at that point in time they should have gone back to state court. That is what makes it defaulted. They chose not to return. Why are you unclear as to whether had they gone into the PCRA court, if they went into state court with a PCRA claim 60 days after May 2007, why are you unclear that the PCRA would not have been accepted? I don't believe it would have been. You think it would have been? I believe it would have been. Well, that's why I thought your answer was – No, no, no. I'm sorry. I believe it would have been. I think I agree with you. What case supports that it would have been accepted? I don't believe there's a case that says it wouldn't have been. Well, there's no case that says it would have been. But your position, if it had been filed within the 60 days, would have been the Pennsylvania Public Records Doctrine that should have been discovered long ago, correct? That's your position here. It wouldn't have – at that time, no, it wouldn't have been. In 2007, I would not have raised it. I mean, I – You would have let it go forward on the merits if they would have filed within 60 days. Yes. I would have gone forward with that. I would have. No, because it wasn't filed. That's your position. Your Honor, my position is I'm just – I have the actual benefit of having done the PCRA, done the federal habeas, and have done this. I know what I would have done because I know that is what we would have done. We would have gone forward on the federal habeas claim and litigated it then. On the merits. On the PCRA claim, I'm sorry, on the merits at the time. But they chose not to do that, and they chose not to raise this public records defense, so-called defense, until 2010. Getting back to the public records doctrine, the Pennsylvania law says as long as it's of record in a state court, it's notice actually to the world. Is that correct? Yes. So that it could be filed in Pennsylvania – in Pittsburgh, anyone in Philadelphia County should know about it. That's the Pennsylvania doctrine, is it not? If it is readily accessible, yes. All right. So your position on the public records situation is that the mere fact that it was public record, ergo, the petitioner should have known. I mean – Well, tell me if I'm corrected in this. Your position is if a plea was given and a deal was struck, or was it struck or if it's questionable, that because it was done on the record, everyone in Pennsylvania should have known. I don't agree with – the problem is – What is your idea of the public records doctrine then? Well, the problem is this. The situation has gotten confused. We're talking about the Brady claim versus whether or not this deal was – this sentencing was public record. Was the sentencing public record? Yes. Whether or not there's really a deal underneath it all, that's an entirely different type of claim. We know that. We're not talking about it. I know. And that becomes the point where why do they raise this defense three years later? Why, after I filed my – amended my answer, where I say go back to state court and deal with it there, do they ignore it? They ignored it through every piece of litigation. They ignored it through every reply brief they filed. They waited until 2010 when, at the end of the day, they lost. They decided to use this as an exception to get around it. Well, the – it was the petitioner who brought up in the magistrate's order, the public record said it would have been futile for him to have filed. And there is no case which says that it wouldn't be – that it would not be futile. And you yourself say that anything filed anywhere in state court is notice to the world, even though, in fact, the petitioner or his attorneys might not have known it. But, again, if – let's say, hypothetically, they didn't know it until May of 2007. They still chose not to go back to try to deal with it. And after 60 days, he made it futile. Right. Right. They waited after 60 days to make it futile. The question is whether it would have been futile if he had filed within 60 days. That's the futile. You know, the amazing thing about this is Professor Chemerinsky has said that understanding habeas is like trying to go through the seven layers of hell. And it is – this is an example of that. Put yourself in the position of Ms. Friedland. You've got a newly discovered evidence 11 years later that there was a plea agreement prior to trial with EPS and it wasn't disclosed to the defense, even though, by the way, the defense had sent a letter to the Commonwealth saying, tell us anything that you've got that might be relevant, and this wasn't disclosed for whatever reason. So we know that there was a plea agreement that wasn't disclosed. And she's in a position saying, okay, if I go back to state court, it's likely, much more likely than not, based on past precedent, that they will tell me that I have – I'm out of time. And then you will say in the federal proceeding that it's procedurally defaulted, therefore we'd never get to the merits. So she's possibly saying, you know, it's probably best that I just bring this up in the federal proceeding, rely on – there's some very convoluted law on the merits, but at least I have a better chance there than I do going back before the state court. That's the complexity of habeas. And she made that call. And when did you say in 2010 it's too late? Your Honor, here's the problem, okay. I did raise that defense in 2007. I said that she should go back to state court pursuant to Ryans v. Weber and ask for a stay. They could have done it. They didn't do anything with it. You mean a stay and a bay? Correct. And, in fact, I argued that position before this court several years ago and was brutalized for something I said regarding Ennslutsker v. Johnson because I suggested it in that case. It wasn't anybody on this panel that brutalized you. No, it was not. I'm sorry, but he's currently deceased. I took a beating, and I deserved it. But in this case, it's different. Not too many counsels admit that, by the way. I'm sorry. Unfortunately, I'm drawing a blank on his name, but he was probably one of the most, no offense to your panel, is that he knew exactly what I was talking about. He knew about the bridge the gun was thrown off of everything. So what I'm saying is he was well-versed in what was going on. And he took me to task in that, in fact, in the opinion. But here, at the time of this case, it was well-established he could go back. It was well-established he could go back. They made a choice. They chose to stay here. They chose to stay in federal court and not exhaust the claim. But you know why. Because they thought the case law here was better for them, perhaps. I don't know. I mean, I'm not Ms. Freeland. I don't know. But it's a choice of law issue with them. The position is it was futile. Well, is it futile, or did you think the case law would fare better there? Or that this court was better than going back in front of Judge Manning? I don't know. I just can't read her mind. But I know. Your understanding of the Pennsylvania records doctrine, do I have it correct that anything that's filed in state court is notice to the world of that proceeding, of open record? Yes. All right. So automatically, then, when this went forward, when he pled and when he was including the petitioner. So why wouldn't it be futile if he attempted to go back? Because if it's raised as a Brady claim, I don't know what the Supreme Court would have done. I don't know what the Supreme Court would have done. You just agree that our understanding of the public records doctrine is that it was notice to the world when he cut a deal. I disagree with this comment of cutting a deal. There is no evidence. Before the time of sentencing, everything wasn't exactly the way it was. We're onto the merits now. 9545, really notice to the world. I don't think that that's relevant here. It said, any petition shall be filed within one year of the date of the judgment unless the facts upon which the claim is predicate were unknown to the petitioner or could not have been discovered with reason. So that even if there was deemed notice to the world, this is an exception. This is very specific, and this would, for lack of a better word, trump notice to the world for purposes of Pennsylvania law. What actual evidence in the record before the magistrate was it that the petitioner or his attorney actually knew of this deal that was cut? What actual notice? Well, in the record, once they filed, they had actual notice that this deal, whatever you want to call it, was cut. No, honestly, what is the evidence that they knew? No, you're saying that once they planned it, they knew. But what is the evidence that they knew that there was a deal? Your Honor, I don't think there was a deal. We understand your position that there was no deal cut, but assuming for the purpose of this question, assume a deal was cut, what in the record, what evidence before the magistrate was there from which he could conclude that the petitioner or his attorney knew of this deal? They knew in 2007 when they filed the petition, the latest, May of 2007. When they filed the petition after the investigator found it in the record, that's the moment they knew. If the facts in which the claim was predicated were known or should have been known, it was May of 2007. Okay, so you agree then, it wasn't until 2007 that they knew or should have known. For purposes of this argument, yes. And then the whole question is whether the public records doctrine makes that knowledge futile insofar as they're going back to state court. That's correct. All right. Now just before we shift gears, your position is there was no deal cut, is that correct as I read your brief? That's correct. I don't believe there's any evidence that a deal was cut before the time of sentencing. Why is there sufficient evidence before the court, sufficient to go back for an evidentiary hearing where at the time of sentencing, first of all, he pled guilty right before trial and he was sentenced right after trial. That's correct. At the time of sentencing, I'm quoting right from the record, that the attorney for the Commonwealth said that we've come to an accord with respect to a sentence that would be acceptable to the court in specifically defending the below guideline sentence as to one of the charges. Sachs observed that Epps, quote, was a key witness in a homicide trial. Epps' own attorney then stated to the effect that he had spoken to Nick Mendoza, that was supervising assistant prosecutor. He was the prosecutor of the Warrens, the Fisher-Dorsett trial. He would come in and testify on behalf of Mr. Epps, and he would say that it was not for Mr. Epps' testimony, which was key to the homicide, there would not have been a conviction, and that the trial court ultimately opposed the recommended sentence, which was substantially below the guideline recommendation. Isn't there sufficient evidence there? We're just talking about whether a deal was cut. To make it suspicious enough for an evidentiary hearing to determine whether or not a deal was cut and that this giglio information that he was testifying for the Commonwealth so that he would get a below guideline sentence on these multiple felonies that he pled to. Your Honor, if you look at the record, if we go back to the guilty plea itself, there is a statement at the guilty plea where it says, Mr. Sachs says, there was no deal. Now, under Pennsylvania law, between the time of sentencing, sorry, between the time you plead guilty, the time of sentencing, you can basically withdraw your guilty plea for any reason you want. It's possible, and I don't know this for a fact, I'm just responding to your question, that Mr. Perino, who's now currently deceased, could have said to Mr. Sachs, hey, look, my guy wants to withdraw this thing. Is there something we can work out? If he's currently deceased, you mean tomorrow he might not be deceased? I apologize. Well, he's deceased. I mean, I can't answer for him now. I'm just spinning off of this. I'm sorry. I apologize, Your Honor. But what I'm saying to you is it could have changed. They could have said, look, Mr. Sachs has said theoretically, I don't want to lose this case. I'll make a new deal. It doesn't mean that there was this deal existed before that, only in that moment. Whether there was a deal, whether there was a promise, whether there was some sort of sub rosa agreement, seems to me would be the subject of an evidentiary hearing were there cause for the procedural default and prejudice that's been shown. So we don't even, we would not, in my view, get to Judge Cowling's question until we have established that there was cause for them not to have filed a second PCRA. I appreciate what Judge Barry said. The reason I'm asking is I want to have your position, should the panel decide, that there is reason for going forward on the merits. And your position is that there was no deal cut. All this talk about he was essential and that he should be, you know, given a below guideline range sentence and so forth, that's mere chatter.  Unlike most witnesses where they're jailhouse snitches or whatever, somewhere there's a deal cut. You're talking about a guy who heard it in the jail. You're talking about the guy on the corner. You're talking, in this case, Mr. Haps was a victim. His friend was killed in the same car. You're not talking about the innocent bystander witness. You're talking about a victim. So at the trial, did anything, I take it nothing came up during the examination of Epps, nor did anything come up during the cross-examination where they asked if Epps had a record. They did ask about his record. I believe the magistrate judge noted that in the. And what did Epps say? They talked about his record. They didn't ask specifically about independent charges, but I know they talked specifically about charges he had in the past. He did have charges. I mean, he was a drug dealer. There's no doubt about that. These young men were not a bunch of priests. That's correct, Your Honor. Well, they were all gang members, weren't they? Yes. I mean, I drive past this crime scene every day, okay? I mean, I know exactly where it is. I know everything that happened. I mean, they're not saints. You're right. Well, that's got nothing to do with the issue before the court. Right, but. Yeah, that was probably the problem of the certificate of. But you were trying to portray Mr. Epps as the paradigm victim of all that. Well, it's better than the. What I'm saying to you, Your Honor, it's better than the guy who uses the jailhouse snitch, because that's not who we're talking about here. You're saying they were present. That's correct. Not only he was present, but Rahim Anderson was present. That's correct. I think it just changes the color that you want to put on the witnesses. Part of the problem that you have here is we're dealing solely with cause. I mean, part of the problem is that the certificate of appealability panel that, unfortunately, I was on, gave a certificate of appealability only with respect to cause, but not prejudice. So prejudice is actually not before us. You could argue that, look, no matter what happened, this is harmless error, but that's not what's before us on this certificate of appealability. Right. And, Your Honor, I stand by my position in my brief that they haven't shown cause to avoid it. They could have gone back to state court to deal with this issue. You could have argued in your brief waiver, could you not? Well, or plain error or something. You really didn't. I stuck with the idea that I answered the COA as I saw it, which is that you asked us to respond to the prejudice argument, and I did. And I stuck by that and said that you could, I mean, not prejudice, the cause argument, and that she did not show cause to avoid it. I mean, that is what happened. I mean, whether or not the district court was wrong and whether the date they picked, it doesn't matter. If I'm right, and I believe I am, they had, from May 2007, they had 60 days. They did not do that. They chose to stay in federal court for whatever reason. Okay. Just one other question. Sorry. The, if, we have a couple of cases. One, Perdomo, which there was affirmatively, there was evidence withheld, and then also Wilson v. Beard. And Wilson v. Beard says, if the prosecution has the obligation pursuant to Perdomo to notify defense counsel that a government witness has a criminal record, even when that witness was represented by someone in defense counsel's office, the fact that a criminal record is a public document cannot absolve the prosecution, prosecutor of her responsibility to provide that evidence, that record to defense counsel. So if Wilson v. Beard and taking off on Perdomo is still good law, and it is two years later, it seems like you had an obligation on the behalf of the prosecutor to tell about Epps' plea agreement, and that didn't occur. Well, Your Honor, like I said, I, as far as this, again, I disagree with the whole plea agreement theory. And it's that from what the record shows, the record shows that he pled. Okay. And after that, I don't know why anything changed. It could have changed for any number of reasons. And so at the least, shouldn't we find out what went on here? If you, but you're still the issue of whether or not. Not that you lose necessarily, but at least let's find out if it was readily discoverable. But again, you'd have the problem of whether or not there's cause to avoid the procedural default. And that's the problem that was before this Court, and it can't be avoided. Because whether or not they could go back to state court, that bell has rung. They've never gone back. They never filed anything since that day. Well, should they if it's, why go back when it's a futile gesture in the first place? You don't make lawyers do things which are worthless and stupid and ridiculous. I, Your Honor, respectfully, I don't know if it was futile then. I don't know if the same case came up tomorrow in federal court, whether or not, if there was. You don't decide that it would be futile, but you say it may not be futile. Is that your position? It's futile right now. It is futile in 2011. But it wasn't futile for 60 days after May 2007. That's correct. Within the first 60 days, your position is it would not have been futile. That's correct. What case do you have that shows that? I don't think there's any case where it says. You say it wouldn't be futile. There's nothing to say it wouldn't be futile. You've got the rule. You've got the Pennsylvania Statute. I'm sorry, but the statute says that, Your Honor. And here's the thing. There's no, you say there's no law that says they could. There's no law that says they couldn't. So you're asking me to prove a negative by my argument, saying that I have to prove negative case law that's going to show something that doesn't exist. I don't believe there's case law that exists that says they can do this or can't do this. It doesn't exist. So what you're asking for is to provide a case that doesn't happen. And so, therefore, the statute stands the way it is. The rules say what they say. They could have gone back to exhaust it. They chose not to. They made a choice, a choice that lawyers make all the time, whether or not to object at a certain question, whether or not to file a particular motion. They're choices. And they chose to stay in federal court because they thought they were in a more favorable forum probably and that's what they picked. Well, the Pennsylvania Doctrine, Records Doctrine, he should have known it at the time that he pled guilty. That's what the law, that's what the public. I don't, I don't, I'm sorry, Your Honor. I disagree with what you're, you're taking one element of it and running with it, when really what we're talking about here is whether or not they knew about the Brady violation, whatever it was, and the last day they knew about it was in May of 2007 and they could have gone back at that point. What you're arguing beyond that is just a hypothetical, whether or not it becomes futile at some point in the future. When in 2007 it wasn't futile, when they could have asked for the stay and obey, they could have done all of this. And I probably wouldn't have opposed it either. I'm just, I mean, what I'm telling you is in 2007 this wasn't a futile act. This was a live action, something they could have dealt with. And they could have said, hey, I have a PCRA, ran up the street because it's not that far, put the PCRA in, and then the judge and state court would have had to deal with it and make a finding. And we wouldn't be standing here today arguing about whether or not it was futile or not because it would have been dealt with. Well, we've heard, I think we've kept you way beyond your time as well. I'm sorry, Your Honor. No, we've been giving you a lot of questions. Thank you. We'll have Ms. Friedland on rebuttal. Thank you, Judge Barry. A couple of things I think that just need to bear repeating is that I have provided the court with cases that interpret the PCRA and apply the public record rule. And I'm not sure how Mr. Roby can urge the court to make a contrary finding on the issue of futility without providing a single case or meaningfully distinguishing the cases that I've provided. I understand Judge Ambrose's comments about the seven stages of hell, and I certainly feel like I'm in one of them right now. But if you will indulge me, I want to just point out one other problem that is in our opening brief in footnote 13, page 31, that hasn't been discussed today, but if the court is grappling with this, I think it's also relevant. And that is, until August of 2007, the Pennsylvania courts also had been interpreting 9545B to not provide jurisdiction unless the newly discovered evidence was not cumulative in nature nor being used solely for impeachment. And it's not an issue that we've raised. I can tell you as an officer of the court it's not the reason why we did not return to state court. I will also tell you as an officer of the court that the reason we didn't return to state court was because of my assessment based on Pennsylvania law that the claim was futile and had nothing to do with a choice of jurisdictions. These cases are difficult to win in any jurisdiction, and I understand that from doing this practice for some time. But the law in Pennsylvania in May 2007, in my opinion, and based on the cases cited in my brief, both in the reply brief at pages 1 and 2, and Commonwealth v. Bennett in my opening brief, page 31, was clear. Mr. Fisher was not getting back into state court under 9545B2. His claim would have been deemed untimely, and then he would have been up a creek without a paddle. The first time that I raised the public records issue in federal court, I raised it the first time it became relevant. And that was at the moment that the district court in February of 2010 made its alternative finding that the claim was defaulted because of a failure to return to court within 60 days. Judge Ambrose asked Mr. Wabi, when did you say that the claim was too late? And Mr. Wabi said, I raised the defense in 2007. Mr. Wabi suggested in his answer that a stay in the Bay would be appropriate under the circumstances. The magistrate judge in her initial R&R did not take Mr. Wabi up on his offer to address that issue, and it made a different finding, which is why my objections based on the public record rule did not appear in my objections to the magistrate R&R. I'm not required to bring an objection unless the court actually finds something. I do want to say one thing because, Judge Barry, you asked right before I sat down before about prejudice. And I agree with you that the evidence that Mr. Epps was facing, you know, the charges that he was facing were not the worst charges in the world. But the assessment of prejudice, both in causing prejudice and with respect to materiality of the Brady claim, requires the court not only to look at the new evidence but to weigh all of the evidence with that evidence included into it. And in this case, it's true that Epps was an alleged eyewitness. But he did not originally name Mr. Fisher as the shooter, nor did Raheem Anderson. Their stories changed between the time of the shooting and the time that they came to trial. Mr. Fisher also had an alibi. There was no physical evidence. There was a jailhouse snitch named Carl Sullivan who named Dorsey and not Fisher. And although it's not pertinent to what happened at the trial, there is now evidence that somebody else was the shooter. And all of the evidence, which led the police in the first instance to focus on Mr. Fisher, dissolved prior to the trial. You may remember that Mr. Fisher became a suspect because of the car that was described. He drove a car that looked similar. Yeah, but I think you're going a little off the issue before us now. I was trying to address prejudice. Unfortunately, we didn't put that in. In the COA. And thank you for reminding me, and I apologize for going on. I mean, one thing that I might consider and could do following this oral argument, depending on how the court feels and I could move forward anyway, would be to file a motion to expand the Certificate of Appeal ability to include the issue of prejudice. So I do believe that my futility argument is the correct standard, that there is enough evidence about a deal in this record, as Judge Cowen said, to warrant an evidentiary hearing, and this court should remand the case for an evidentiary hearing on the issue of whether there was a deal. And that goes to overcoming the other default, the one that we did concede, which is because he failed to raise it on direct appeal and in his first PCRA. All right. I think we've given you both an enormous amount of time. And unless there are any questions. I just have one procedural question. Because if the evidence of a plea agreement, I'm sorry, of a plea, possibly an agreement, which we're not sure existed, and then under guidelines sentence or under the usual sentence, existed with respect to EPS, and he knew this, he, Fisher, knew this in May 2007, what was the reason for not bringing this up until 2010? Your Honor, you mean in federal court? In federal court. Federal court. The only reason is because there was nothing, the magistrate judge resolved the default issue, finding a different default. Finding that he knew or should have known during his direct appeal or first PCRA proceedings, that was the finding that the magistrate judge made, and that finding was the subject of my objection. It was not until years later that the district court said, well, you know what, I don't want to choose between what she's saying and what the magistrate judge is saying, and he issued a memorandum opinion with an alternative holding. One is I affirm the magistrate judge, Mr. Fisher, knew or should have known during his direct appeal or first PCRA, but in the alternative I also hold that he should have returned under 9545B to file a second PCRA. My error, Judge Ambrose, if there was one, was not seeking reconsideration of the district court's memorandum opinion of February 2010, challenging his alternative holding, but as I explained before, the case was going back to the magistrate judge. I believed I would have the opportunity to do that, and indeed when the case came back to the district court, I did include that ground in my objections so that the district court would have the first opportunity to resolve that issue before an appeal. I really don't see in the first R&R any reason you shouldn't have raised it the public record exception to this ruling then. Right then and there. Within 60 days, well, within 60 days. Even in the federal proceeding. Even in the federal proceeding. I'm listening to this conversation and preparing for this case for oral argument. I would agree with you today that that may have been a better course, but I do not believe that it requires the court to find waiver because it simply was not a finding, and the rules governing objections to the report and recommendation vis-a-vis waiver only require that I file objections to findings of fact and conclusions of law in the magistrate judge's conclusion, and I did, in fact, raise an objection to the factual finding that he knew or should have known during the direct appeal or during his first PCRA, which was the only finding at the time that I had the obligation. Could I have been overly cautious as I was before? Whatever you should or shouldn't have done at that time, you concede that there was knowledge in May 2005. Knowledge of what, Your Honor? Knowledge of this, of the claim you're raising now. Absolutely. I mean, I made the decision not to go to state court, as I said, because based on Pennsylvania law, it was my estimation that returning to state court would have been a futile endeavor. Do you have any more questions? No. Do you have any questions? I think this is one of the best argued cases I've heard in some time. I speak only for myself, but I think both sides did a wonderful job, and it's a very tough case, and we will think about it very, very carefully, and we will take a decision under advisement. Thank you, Kathy. Your Honor, thank you again for indulging me from afar.